**GUCOVSCHI ROZENSHTEYN, PLLC.**
Adrian Gucovschi (State Bar No. 360988)
140 Broadway, Fl. 46
New York, NY 10005
Telephone: (212) 884-4230
Facsimile: (212) 884-4230
E-Mail: adrian@gr-firm.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUDY GALANTER, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| CRESTA INTELLIGENCE, INC., | |
| Defendant. | |

Plaintiff Judy Galanter ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Cresta Intelligence, Inc. ("Defendant" or "Cresta"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

**NATURE OF THE ACTION**

1. Cresta developed and operates a conversation intelligence software-as-a-service ("SaaS") that it sells to, and partners with, third-party businesses (such as United Airlines) so that those businesses can "ingest[] live conversations and prompt[] agents with real-time suggestions, such as objection responses, expectation setting, troubleshooting FAQs, and more."[1] To accomplish this, Defendant uses its proprietary artificial intelligence ("AI") model trained on its clients "data to develop a deep contextual understanding of [their] customers, agents, and processes."[2] The platform operates by recording a caller's speech and then transcribing it using natural language processing ("NLP"), allowing artificial intelligence ("AI") to read the text, identify patterns, and classify the data. The result is that United Airlines consumers' telephone conversations are surreptitiously transmitted to Cresta's servers, where they are processed and analyzed using Cresta's AI and NLP, and thereafter presented to Cresta's clients in dashboards, searchable transcripts, and reports.

2. Cresta's conversation intelligence SaaS includes several services ("Services"), including, *inter alia*, Agent Assist and Conversation Intelligence. Third party businesses such as United Airlines employ Defendant's Services.

3. By employing the Services, United Airlines has aided, agreed with, employed, and/or permitted Cresta to monitor, read, record, learn the contents of, or otherwise intercept the conversations of their current and prospective consumers without their consent. These consumers include individuals who call United Airlines (*i.e.*, their customer service line) from within the State

---

[1] https://cresta.com/blog/investing-in-cresta-supercharging-agents-in-real-time/#:~:text=Enter%C2%A0Cresta%3A%20the%20Expertise%20AI%20platform,their%20models%20to%20top%20performers

[2] https://cresta.com/ai-platform/

of California to, among other things, make reservations, request special travel accommodations, make changes to their flights, and receive additional forms of customer support.

4.      Unbeknownst to consumers, when they contact and speak with businesses such as United Airlines, Cresta eavesdrops and records these conversations to which it is not a party. By partnering with third party businesses and deploying its Services, Cresta collects a trove of data from telephone conversations between businesses (in this case, United Airlines) and their consumers.

5.      Cresta needs access to this data to provide the Services' features (including, *inter alia*, call recording, call transcription, and analysis thereof) described *infra*. Thus, Cresta records, accesses, reads, and learns the contents of conversations between California residents, on the one hand, and businesses, including but not limited to United Airlines, on the other hand.

6.      Crucially, neither United Airlines nor Cresta procured the consent of any person who interacted with United Airlines prior to Cresta recording, accessing, reading, and learning the contents of conversations between Californian residents and United Airlines.

7.      For instance, United Airlines consumers are told that their calls may be "monitored or recorded for quality purposes." However, there is no disclosure that consumers' calls will also be shared with Cresta, an unknown third party, for purposes unrelated to quality assurance and/or training. This lack of consent is particularly troublesome given that Cresta has the capability to use the contents of those conversations for purposes other than simply relaying the same to United Airlines.

8.      Plaintiff brings this action to prevent Defendant from further violating the privacy rights of California residents, and to recover statutory damages from Defendant for failing to comply with the California Invasion of Privacy Act ("CIPA") §§ 631 and 632.

## PARTIES

9.      Plaintiff Judy Galanter resides in Los Angeles, California, intends to remain there, and is, therefore, a citizen of California. Ms. Galanter was in California when she called United Airlines within the last 12 months of the filing of this Complaint to, *inter alia*, update her travel arrangements and request special travel accommodations. Ms. Galanter reasonably expected that her interactions with United Airlines, which included confidential travel arrangements and

accommodations, were only between her and United Airlines. Ms. Galanter was not aware, nor did she have any reason to suspect, that her phone calls were being surreptitiously transmitted to an unknown third party software analytics provider: Cresta.

10. Nonetheless, Cresta, through the Services, eavesdropped on Ms. Galanter's entire conversation with United Airlines. Specifically, Cresta, through the Services, recorded and transcribed Ms. Galanter's conversations in real time and performed AI analysis thereon. Through this process, Cresta read, learned, and used the contents of Ms. Galanter's conversations with United Airlines in real time. Both Cresta and United Airlines failed to inform Ms. Galanter, prior to recording: (i) that a third party, Cresta, was listening in on her communications with United Airlines, (ii) that a third party, Cresta, was tapping or otherwise making an unauthorized connection with Ms. Galanter's telephone conversations using the Services, and (iii) that the contents of Ms. Galanter's confidential communications with United Airlines were being recorded, collected, intercepted, and analyzed by a third party, Cresta, using the Services.

11. Nor did Ms. Galanter provide consent for the contents of her communications to be used for purposes other than United Airlines' internal training or quality assurance purposes, such as Cresta's marketing analytics, AI development, and industry reports, amongst other uses, as discussed *infra*. Therefore, Ms. Galanter did not consent to Cresta intercepting or recording her calls to United Airlines, nor did she consent to the contents of her communication to be used by United Airlines or Cresta for the full scope of the Services or Cresta's other uses of the call recordings.

12. Plaintiff has, accordingly, had her privacy invaded due to Cresta's violations of CIPA alleged herein.

13. Defendant Cresta, Inc. is a Delaware corporation with its principal place of business in Sunnyvale, California.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action where there are more than 100 members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one member of the putative Class is a citizen of a state different from Defendant.

15. The Court has personal jurisdiction over Defendant because Defendant is headquartered in this District.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to this action occurred in this District.

## FACTUAL ALLEGATIONS

**I.    The California Invasion Of Privacy Act**

17. The California Legislature enacted the Invasion of Privacy Act to protect certain privacy rights of California citizens. The legislature expressly recognized that "the development of new devices and techniques for the purpose of eavesdropping upon private communications … has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." Cal. Penal Code § 630.

18. The California Supreme Court has repeatedly stated an "express objective" of CIPA is to "protect a person placing or receiving a call from a situation where the person on the other end of the line *permits an outsider to tap her telephone or listen in on the call.*" *Ribas v. Clark*, 38 Cal. 3d 355, 364 (1985) (emphasis added).

19. Further, as the California Supreme Court has held in explaining the legislative purpose behind CIPA:

> While one who imparts private information risks the betrayal of her confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its *simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device.*
>
> As one commentator has noted, such secret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of her statements.

*Ribas v. Clark*, 38 Cal. 3d 355, 360-61 (1985) (emphasis added; internal citations omitted).

20. As part of CIPA, the California Legislature enacted § 631(a), which prohibits any person or entity from [i] "intentionally tap[ping], or mak[ing] any unauthorized connection … with any telegraph or telephone wire," [ii] "willfully and without the consent of all parties to the

communication … read[ing], or attempt[ing] to read, or to learn the contents or meaning of any … communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within [California]," or [iii] "us[ing], or attempt[ing] to use … any information so obtained."

21. CIPA § 631(a) also penalizes [iv] those who "aid[], agree[] with, employ[], or conspire[] with any person" who conducts the aforementioned wiretapping, or those who "permit" the wiretapping.

22. As part of the Invasion of Privacy Act, the California Legislature additionally introduced Penal Code § 632(a), which prohibits any person or entity from "intentionally and without the consent of all parties to a confidential communication, us[ing] an electronic amplifying or recording device to eavesdrop upon or record [a] confidential communication."

23. Individuals may bring an action against the violator of CIPA §§ 631 and 632 for $5,000 per violation. Cal. Penal Code § 637.2(a)(1). Plaintiff does so here against Cresta.

II. **Defendant Violates The California Invasion Of Privacy Act**

24. Cresta ranks amongst the leaders in AI conversation analytics. To accomplish this, Defendant uses its proprietary AI model, which leverages insights from "analyz[ing] over 6 million conversations to explore key selling behaviors and identify a tailored, three-step approach to closing the sales performance gap and driving successful outcomes."[3] Cresta's conversation intelligence software-as-a-service ("SaaS") includes several services, including its Agent Assist and Conversation Intelligence (the "Services").

25. Cresta's Agent Assist "automatically summarizes conversations, recording call reason, call resolution, actions taken, key outcomes and required follow ups."[4] Cresta accomplishes this by deploying a speech-transcription software that "captures key information in real time like name, phone number, email, and even custom attributes...saving agents hours of data entry."[5]

---

[3] https://cresta.com/product/agent-knowledge-assist/
[4] https://www.observe.ai/real-time/summarization-ai
[5] https://youtu.be/5E5n4poSKSc

26. Cresta's Conversation Intelligence "transforms contact center management with deeply actionable insights, hyper-efficient quality management, and outcome-driven coaching."[6] For instance, Cresta's phone call transcriptions permit "managers [to] accelerate coaching and performance management by reviewing 100% of calls and surfacing the key moments where managers should focus their coaching efforts."[7] Cresta is obtain a complete overview of customers' interactions by deploying its proprietary AI, which "understands complex statements, emotions, behaviors, and more."[8] With this information in hand, " businesses can extract customer insights from conversational data and instantly take action" including being able to "[i]dentify key trends, answer critical business questions, and uncover unknown unknowns, like why customers are calling in."[9] For instance, Cresta's Conversation Intelligence permits an "airline [to] ask [] what their customers are saying about their competitors, and draws on those insights to adjust scheduling and on-board product strategy to maintain differentiation."[10]

27. When Cresta deploys the Services on a phone conversation, it is not like a tape recorder or a "tool" used by one party to record the other. Instead, Cresta—a separate and distinct third-party entity from the parties to the conversation—uses the Services to eavesdrop upon, record, extract data from, and analyze a conversation to which it is not a party. This is because Cresta itself is collecting the content of any conversation. That data is then analyzed by Cresta in the manner alleged above before being provided to any entity that was a party to the conversation (like United Airlines).

28. Cresta has the capability to use the contents of conversations it collects through Services for its own purposes and purposes beyond simply furnishing recordings to its clients, such as United Airlines.

---

[6] https://cresta.com/conversation-intelligence/
[7] https://cresta.com/blog/announcing-cresta-for-voice/
[8] https://cresta.com/blog/why-customers-are-calling-your-contact-center-pissed-off-and-how-to-change-it/
[9] https://cresta.com/videos/introducing-ai-analyst-business-insights-delivered-in-minutes/
[10] *Id.*

29. Indeed, Cresta's own executives describe that software uses customer interactions to refine its AI – for example, by "captur[ing] data to train future models" from each agent's call.[11]

30. Cresta's documentation corroborates this. For instance, when a business engages Cresta to provide the Services, the standard agreements on Cresta's website provide, in pertinent part, that thoses businesses grant Cresta:

> "a nonexclusive, royalty-free, worldwide, perpetual, irrevocable, transferable and sublicensable right and license to collect, access, use, process, transmit, display, publish, adapt and modify the Customer Content as required for Cresta and its subcontractors and service providers to provide, improve, and enhance its product offerings."[12]

31. The agreement further provides that:

> "During the term of this Agreement and thereafter, Cresta may collect and use anonymized or aggregated Customer Content to provide and improve its products and services (subject to Cresta's compliance with legal and confidentiality obligations"[13]

32. A parallel agreement similarly provides that those businesses grant Cresta:

> "a nonexclusive, royalty-free, worldwide, perpetual, irrevocable, transferable and sublicensable right and license to use and modify the Customer Content as required for Cresta and its subcontractors and service providers to provide, support, and improve the Services… [As well as the] right to create and use anonymized or aggregated 1) Customer Content and 2) data about Customer's or its Users' access and use of the Services, to provide, improve, and market the Services."[14]

33. Thus, Cresta has the capability to use the wiretapped data it collects through the Services to, *inter alia*, provide, run, personalize, improve, operate, maintain, and market its products and services, and to conduct performance reporting.

---

[11] https://cresta.com/blog/cresta-raises-125m-to-create-the-unified-platform-for-human-and-virtual-agents/#:~:text=Starting%20with%20human%20augmentation%20allows,efficient%20and%20effective%20customer%20experience

[12] https://cresta.com/cresta-diagnostic-services-agreement/

[13] *Id.*

[14] https://cresta.com/mssa/

34. Cresta knows that consumers of United Airlines are unaware that Cresta is monitoring, recording, and/or analyzing their conversations. Nonetheless, Cresta violates consumers' privacy rights, without the requisite consent, in pursuit of profit.

### **CLASS ALLEGATIONS**

35. Plaintiff seeks certification of the following class: all California residents who called United Airlines while in California and whose conversations were intercepted and recorded by Cresta (the "Class").

36. Plaintiff reserves the right to modify the Class definition, including by using subclasses, as appropriate based on further investigation and discovery obtained in the case.

37. The following people are excluded from the Class: (1) any Judge presiding over this action and members of her or her family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest (including current and former employees, officers, or directors); (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

38. **Numerosity:** The number of persons within the Class is substantial and believed to amount to thousands, if not millions of persons. It is, therefore, impractical to join each member of the Class as a named Plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Class render joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation. Moreover, the Class is ascertainable and identifiable from Defendant's records.

39. **Commonality and Predominance:** There are well-defined common questions of fact and law that exist as to all members of the Class and that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary between members of the Class, and which may be determined without reference to the

1  individual circumstances of any Class member, include, but are not limited to, the following:

2  whether Defendant violated CIPA §§ 631 and 632; whether Defendant sought or obtained prior

3  consent—express or otherwise—from Plaintiff and the Class; and whether Plaintiff and members

4  of the Class are entitled to damages, reasonable attorneys' fees, pre-judgment interest and costs of

5  this suit.

6   40.   **Typicality:** The claims of the named Plaintiff are typical of the claims of the Class because the named Plaintiff, like all other members of the Class members, called United Airlines' telephone lines and had the content of their communications read, learned, analyzed, and/or examined by Cresta.

10  41.   **Adequate Representation:** Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of members of the Class will be fairly and adequately protected by Plaintiff and her counsel.

15  42.   **Superiority:** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of members of the Class. Each individual member of the Class may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

# CAUSES OF ACTION

## COUNT I
### Violation Of The California Invasion Of Privacy Act, Cal. Penal Code § 631(a)

43. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

44. CIPA § 631(a) imposes liability for "distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978).

45. To establish liability under CIPA § 631(a), a plaintiff need only establish that a defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,

> Or

> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,

> Or

> Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,

> Or

> Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

46. The Services are a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct at issue here.

47. Cresta is a separate legal entity from United Airlines that offers "'software-as-a-service' and not merely a passive device." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021). Accordingly, Cresta was a third party to any communication between Plaintiff and members of the Class, on the one hand, and United Airlines, on the other. *Id.* at 521; *see also Flowers v. Twilio, Inc.*, 2016 WL 11684603, at *1 (Cal. Super. Ct. Aug. 2, 2016) ("[T]she complaint makes clear that it is Twilio, not its clients, that recorded the communications … The allegations are not, as Twilio asserts, that Twilio simply provided a software product that third parties misused.").

48. Cresta is a third party wiretapper because it has the capability to use the contents of conversations it collects through the Services for its own purposes, other than simply furnishing the recording to its clients, such as United Airlines. *Javier v. Assurance IQ, LLC*, 2649 F. Supp. 3d 891, 900 (N.D. Cal. 2023); *see also Yockey v. Salesforce, Inc.*, --- F. Supp. 3d ---, 2023 WL 5519323, at *5 (N.D. Cal. Aug. 25, 2023).

49. At all relevant times, through the Services, Cresta violated the first prong of CIPA § 631(a) by intentionally tapping, electrically or otherwise, the lines of telephone communication between Plaintiff and Class Members, on the one hand, and United Airlines, on the other hand.

50. At all relevant times, through the Services, Cresta violated the second prong of CIPA § 631(a) by willfully and without the consent of all parties to the communication, or in any unauthorized manner, reading or attempting to read or learn the contents of electronic communications between Plaintiff and Class Members, on the one hand, and United Airlines, on the other hand, while the electronic communications were in transit or passing over any wire, line or cable or were being sent from or received at any place within California.

51. Cresta failed to inform Plaintiff and Class Members: (i) that Cresta, as a third party, was listening in on communications between Plaintiff and Class Members, on the one hand, and United Airlines, on the other hand; (ii) that Cresta, as a third party, was tapping or otherwise making an unauthorized connection with Plaintiff's and Class Members' conversations with United Airlines using the Services; and (iii) that the content of Plaintiff's and Class Members' communications with United Airlines were being recorded, collected, intercepted, and analyzed by, Cresta, a third party.

52. Accordingly, neither Plaintiff nor any Class Member consented to Cresta's interception of their communications with United Airlines.

53. Cresta knows it is a separate and distinct third-party entity from United Airlines and customer service agents, the consumers speaking with United Airlines, and the conversations at issue. Cresta knows it is eavesdropping upon and recording conversations to which it is not a party.

54. Pursuant to Cal. Penal Code § 637.2, Plaintiff and Class Members have been injured by the violations of CIPA § 631(a), and each seeks statutory damages of $5,000 for each of Cresta's violations of CIPA § 631(a).

## COUNT II
## Violation Of The California Invasion of Privacy Act, Cal. Penal Code § 632(a)

55. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

56. CIPA § 632(a) prohibits an entity from "intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio." Cal. Penal Code § 632(a).

57. The Services are an "electronic amplifying or recording device."

58. At all relevant times, Cresta intentionally recorded the confidential communications of Plaintiff and Class Members.

59. At all relevant times, the communications between Plaintiff and the Class Members, on the one hand, and United Airlines, on the other, were confidential. Communications entail discussions of financial information for travel reservations, modifications, special accommodations, and other forms of information required for the purpose of identity verification.

60. When communicating with United Airlines, Plaintiff and Class Members had an objectively reasonable expectation of privacy. Plaintiff and the Class Members did not expect that

Cresta, an unknown third party, would intentionally use an electronic amplifying or recording device to record their confidential communications.

61. Plaintiff and the Class Members did not consent to Cresta's intentional use of an electronic amplifying or recording device to record their confidential communications.

62. Pursuant to Cal. Penal Code § 637.2, Plaintiff and the Class Members have been injured by the violations of CIPA § 632(a), and each seeks statutory damages of $5,000 for each of Cresta's violations of CIPA § 632(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the Class, naming Plaintiff as representative of the Class, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

(b) For an order declaring that Defendant's conduct violates the statute referenced herein;

(c) For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d) For actual, compensatory, statutory, and/or punitive in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest on all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief;

(g) For injunctive relief as pleaded or as the Court may deem proper; and

(h) For an order awarding Plaintiff and the Class their reasonable attorneys' fees, expenses, and costs of suit.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated: June 13, 2025

Respectfully submitted,

**GUCOVSCHI ROZENSHTEYN, PLLC.**

By:  */s/ Adrian Gucovschi*

Adrian Gucovschi (State Bar No. 360988)
140 Broadway, Fl. 46
New York, NY 10005
Telephone: (212) 884-4230
Facsimile: (212) 884-4230
E-Mail: adrian@gr-firm.com

*Attorney for Plaintiff*

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                       14