1   COOLEY LLP
    BETHANY C. LOBO (248109)
2   (blobo@cooley.com)
    3 Embarcadero Center, 20th Floor
3   San Francisco, California 94111-4004
    Telephone:   +1 415 693 2000
4   Facsimile:   +1 415 693 2222

5   LILIA R. LOPEZ (299230)
    (llopez@cooley.com)
6   1299 Pennsylvania Avenue, NW Suite 700
    Washington, D.C. 20004-2400
7   Telephone:   +1 202 842 7800
    Facsimile:   +1 202 842 7899

8
    NACHI A. BARU (345978)
9   (nbaru@cooley.com)
    10265 Science Center Drive
10  San Diego, CA 92121-1117
    Telephone:   +1 858 550 6000
11  Facsimile:   +1 858 550 6420

12  Attorneys for Defendant
    CRESTA INTELLIGENCE, INC.

13

14                  UNITED STATES DISTRICT COURT

15                  NORTHERN DISTRICT OF CALIFORNIA

16                      SAN FRANCISCO DIVISION

17

18  JUDY GALANTER, individually and on        Case No. 3:25-cv-05007-SI
    behalf of all others similarly situated,
19                                            **DEFENDANT CRESTA INTELLIGENCE, INC'S**
                   Plaintiff,                 **NOTICE OF MOTION AND MOTION TO**
20                                            **DISMISS**
           v.
21                                            Date: October 17, 2025
    CRESTA INTELLIGENCE, INC.,                Time: 10:00 a.m.
22                                            Judge: Hon. Susan Illston
                   Defendant.
23                                            Date Action Filed: June 13, 2025
                                              Trial Date: None
24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................. 1

II.  BACKGROUND ................................................................................................. 3

III. LEGAL STANDARD ......................................................................................... 5

IV.  ARGUMENT ...................................................................................................... 5

    A.  Plaintiff's Claims Are Preempted by the Airline Deregulation Act. ..................... 5

    B.  Plaintiff Fails to Plead a CIPA § 631(a) Violation. ................................................. 8

        1.  Cresta was not a third party to Plaintiff's communications with United. ................................................................................................................ 9

            a.  Cresta is not a third party under the "capability" test. .................. 10

            b.  Cresta is not a third party under the "extension" test. ................... 14

        2.  Plaintiff does not allege that Cresta attempted to read or learn the contents of her communication while "in transit," as required under Section 631(a)'s second clause. ............................................................... 17

        3.  Plaintiff does not allege eavesdropping on a "telegraph or telephone wire," as required under Section 631(a)'s first clause. ............................. 19

        4.  Plaintiff consented to having her call monitored and recorded. ............... 20

    C.  Plaintiff Fails to Plead a CIPA § 632(a) Claim. ..................................................... 21

V.   CONCLUSION .................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Am. Airlines, Inc,. Privacy Litig.*,
   370 F. Supp. 2d 552 (N.D. Tex. 2005)......................................................................................7

*Am. Airlines, Inc. v. Wolens*,
   513 U.S. 219 (1995)................................................................................................................6

*Ambriz v. Google, LLC*,
   No. 23-5437, 2025 WL 830450 (N.D. Cal. Feb. 10, 2025) .......................................13, 14, 20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................................................5

*Balletto v. Am. Honda Motor Co.*,
   No. 23-1017, 2023 WL 7026931 (N.D. Cal. Oct. 24, 2023).....................................................11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................................5

*Byars v. Hot Topic, Inc.*,
   656 F. Supp. 3d 1051 (C.D. Cal. 2023)...................................................................................15

*Cervantes v. Countrywide Home Loans, Inc.*,
   656 F.3d 1034 (9th Cir. 2011).................................................................................................23

*Cody v. Boscov's, Inc.*,
   658 F. Supp. 3d 779 (C.D. Cal. 2023).....................................................................................16

*Cody v. Ring LLC*,
   718 F. Supp. 3d 993 (N.D. Cal. 2024) ....................................................................................13

*Doe v. Kaiser Foundation Health Plan*
   No. 23-2865, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024)....................................10, 12, 13

*Doe v. Microsoft Corp.*,
   No. 23-0718, 2023 WL 8780879 (W.D. Wash. Dec. 19, 2023) .............................................22

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020)...................................................................................................12

*Farash v. Cont'l Airlines, Inc.*,
   574 F. Supp. 2d 356 (S.D.N.Y. 2008), *aff'd*, 337 F. App'x 7 (2d Cir. 2009) ..........................8

*Fudge v. Delta Air Lines, Inc.*,
   753 F. Supp. 3d 987 (C.D. Cal. 2024)....................................................................................6, 7

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Garcia v. Build.com, Inc.*,
No. 22-1985, 2023 WL 4535531 (S.D. Cal. July 13, 2023) ................................................. 12

*Gibson v. Planned Parenthood Fed'n of Am., Inc.*,
No. 23-4529, 2024 WL 4251892 (N.D. Cal. July 2, 2024).................................................... 21

*Gladstone v. Amazon Web Services, Inc.*,
739 F. Supp. 3d 846 (W.D. Wash. 2024) ............................................................................. 13

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ................................................................................. 19

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) ................................................................................. 22

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ........................................................................ *passim*

*Griffith v. TikTok, Inc.*,
No. 23-964, 2024 WL 5279224 (C.D. Cal. Dec. 24, 2024) ................................................. 21

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) ...................................................................... 10, 11, 13

*In re JetBlue Airways Corp. Privacy Litig.*,
379 F. Supp. 2d 299 (E.D.N.Y. 2005) ................................................................................... 8

*Johnson v. Blue Nile, Inc.*,
No. 20-8183, 2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) ................................................. 15

*Jones v. Tonal Sys., Inc.*,
751 F. Supp. 3d 1025 (S.D. Cal. 2024) ............................................................................... 17

*Kearney v. Salomon Smith Barney, Inc.*,
39 Cal. 4th 95 (2006) .......................................................................................................... 20

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018)................................................................................................. 5

*Kight v. CashCall, Inc.*,
200 Cal. App. 4th 1377 (2011).............................................................................................. 21

*Kislov v. Am. Airlines, Inc.*,
No. 17-9080, 2022 WL 846840 (N.D. Ill. Mar. 22, 2022).................................................... 7

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

**CRESTA'S MOTION TO DISMISS**
**(CASE NO. 3:25-CV-05007-SI)**

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Licea v. Am. Eagle Outfitters, Inc.*,
   659 F. Supp. 3d 1072 (C.D. Cal. 2023)........................................................................ 11, 18, 19

*Licea v. Cinmar, LLC*,
   659 F. Supp. 3d 1096 (C.D. Cal. 2023)........................................................................ 15, 17, 20

*Mandel v. Hafermann*,
   503 F. Supp. 3d 946 (N.D. Cal. 2020) ................................................................................... 20

*Mastel v. Miniclip SA*,
   549 F. Supp. 3d 1129 (E.D. Cal. 2021)............................................................................ 18, 19

*Matera v. Google Inc.*,
   No. 15-4062, 2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) ................................................ 20

*Mireskandari v. Mail*,
   No. 12-29743, 2013 WL 12129559 (C.D. Cal. July 30, 2013)............................................... 18

*Morales v. Trans World Airlines, Inc.*,
   504 U.S. 374 (1992)................................................................................................................ 6

*Negro v. Super. Ct.*,
   230 Cal. App. 4th 879 (2014)................................................................................................ 20

*In re Northpoint Comm'ns Grp., Inc., Secs. Litig.*,
   221 F. Supp. 2d 1090 (N.D. Cal. 2002) .................................................................................. 5

*Northwest, Inc. v. Ginsberg*,
   572 U.S. 273 (2014)........................................................................................................ 2, 5, 6

*Pena v. British Airways, PLC (UK)*,
   No. 18-6278, 2020 WL 3989055 (E.D.N.Y. Mar. 30, 2020), *aff'd sub nom.*
   *Pena v. British Airways, PLC*, 849 F. App'x 13 (2d Cir. 2021) .............................................. 8

*People v. Wilson*,
   17 Cal. App. 3d 598 (1971).................................................................................................... 18

*Pica v. Delta Air Lines, Inc.*,
   No. 18-2876, 2019 WL 1598761 (C.D. Cal. Feb. 14, 2019), *aff'd*, 812 F.
   App'x 591 (9th Cir. 2020)........................................................................................................ 7

*Posadas v. Goodyear Tire & Rubber Co.*,
   No. 23-0402, 2024 WL 5114133 (S.D. Cal. Dec. 13, 2024)................................................... 17

*R.C. v. Sussex Publishers, LLC*,
   No. 24-2609, 2025 WL 948060 (N.D. Cal. Mar. 28, 2025).................................................... 17

TABLE OF AUTHORITIES
(continued)

Page(s)

*Revitch v. New Moosejaw, LLC*,
    No. 18-6827, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)....................................................... 21

*Ribas v. Clark*,
    38 Cal. 3d 255 (1985) ................................................................................................... 10, 14

*Rodriguez v. Google LLC*,
    No. 20-4688, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022)....................................................... 18

*Rogers v. Ulrich*,
    52 Cal. App. 3d 894 (1975)............................................................................... 9, 10, 14, 15

*Steckman v. Hart Brewing, Inc.*,
    143 F.3d 1293 (9th Cir. 1998)............................................................................................ 5

*Swarts v. Home Depot, Inc.*,
    689 F. Supp. 3d 732 (N.D. Cal. 2023) ............................................................................... 11

*Taylor v. ConverseNow Techs., Inc.*,
    No. 25-990, 2025 WL 2308483 (N.D. Cal. Aug. 11, 2025) .............................. 13, 14, 18, 22

*Torres v. Prudential Fin., Inc.*,
    No. 22-7465, 2025 WL 135088 (N.D. Cal. Apr. 17, 2025)....................................................... 18

*Valenzuela v. Keurig Green Mountain, Inc.*,
    674 F. Supp. 3d 751 (N.D. Cal. 2023) ........................................................................... 17, 18

*Valenzuela v. Super Bright LEDs Inc.*,
    No. 23-1148, 2023 WL 8424472 (C.D. Cal. Nov. 27, 2023)..................................................... 11

*Warden v. Kahn*,
    99 Cal. App. 3d 805 (1979)................................................................................................ 9

*Weisbuch v. Cnty. of L.A.*,
    119 F.3d 778 (9th Cir. 1997)............................................................................................... 5

*Williams v. DDR Media, LLC*,
    No. 22-3789, 2023 WL 5352896 (N.D. Cal. Aug. 18, 2023) (Illston, J.)................... 9, 10, 15

*Williams v. DDR Media, LLC*,
    No. 22-3789, 2024 WL 347904 (N.D. Cal. Jan. 30, 2024) (Illston, J.)............................ 5, 12

*Williams v. What If Holdings, LLC*,
    No. 22-3780, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022)............................... 9, 14, 15, 16

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Yockey v. Salesforce, Inc.*,
    688 F. Supp. 3d 962 (N.D. Cal. 2023) .................................................................... 11

*In re Zynga Privacy Litig.*,
    750 F.3d 1098 (9th Cir. 2014) ............................................................................. 19

**Statutes**

49 U.S.C.
    § 40101 .................................................................................................................... 5
    § 40101(a)(6) ........................................................................................................... 5
    § 40101(a)(12) ......................................................................................................... 5
    § 41713(b)(1) ........................................................................................................... 5

Airline Deregulation Act of 1978 .................................................................. *passim*

Cal. Penal Code
    § 630 ...................................................................................................................... 18
    § 631(a) ........................................................................................................... *passim*
    § 632(a) ........................................................................................................... *passim*
    § 632(c) ................................................................................................................ 21

California Invasion of Privacy Act ............................................................... *passim*

**Other Authorities**

Rule 12(b)(6) ....................................................................................................... 1, 5

1          **NOTICE OF MOTION AND MOTION**

2    **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3          PLEASE TAKE NOTICE that on October 17, 2025 at 10:00 am, or as soon thereafter as

4    this Motion may be heard, before the Honorable Susan Illston of the United States District Court

5    for the Northern District of California at the San Francisco Courthouse, Courtroom 1, 17th Floor,

6    located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Cresta Intelligence, Inc.

7    ("Cresta") will and hereby does move the Court to dismiss Plaintiff's Complaint in full.  The Motion

8    is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and

9    Authorities, Cresta's Administrative Motion to Seal, the Declaration of Vahid Manie-Oskoii

10   ("Manie-Oskoii Declaration") in support of Cresta's Administrative Motion to Seal, pleadings, oral

11   argument, and such other materials as the Court may consider.

12         **STATEMENT OF REQUESTED RELIEF**

13         Cresta respectfully requests that the Court dismiss the Complaint in full and with prejudice

14   for failure to state a claim upon which relief can be granted under Rule 12(b)(6).

15         **ISSUES TO BE DECIDED**

16         1.      Whether Cresta is not liable under the California Invasion of Privacy Act ("CIPA"),

17   California Penal Code Sections 631(a) and 632(a), because Plaintiff's claims are preempted by the

18   Airline Deregulation Act of 1978.

19         2.      Whether the Complaint otherwise fails to state facts sufficient to support a claim

20   against Cresta under CIPA Sections 631(a) and 632(a).

21         **MEMORANDUM OF POINTS AND AUTHORITIES**

22   **I.    INTRODUCTION**

23         Plaintiff Judy Galanter alleges that Cresta wrongfully eavesdropped on, and wiretapped, a

24   call she made to United Airlines' customer service phone line in violation of CIPA Sections 631(a)

25   and 632(a), because United used Cresta's software—the modern equivalent of a tape recorder—to

26   support its human customer service agent during her call, ***after*** advising her that her call could be

27   monitored or recorded.  Her Complaint fails outright for two independent reasons: her claims are

28   preempted under federal law, and they are insufficiently stated in numerous ways.

*First*, Plaintiff's claims are wholly preempted by the Airline Deregulation Act of 1978 ("ADA") because they are "related to" United's services.  Congress enacted the ADA to promote "efficiency, innovation, and low prices" through "maximum reliance on competitive market forces" rather than regulation.  *See Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 283 (2014).  Thus, the United States Supreme Court has held that the ADA squarely preempts claims under state laws for conduct that is "related to"—*i.e.*, has "a connection with or reference to"—an airline's prices, routes, or services.  *Id.*  ADA preemption applies to claims against both airlines and their service providers.  Resultantly, the ADA preempts Plaintiff's theory of liability—that Cresta violated CIPA by "eavesdropping" on individuals who called United customer service to make or change flight reservations, request travel accommodations, or receive other customer support.

*Second*, Plaintiff's CIPA Section 631(a) claim fails in its entirety, because she does not allege that Cresta was a third-party eavesdropper to her communications with United.  Under Section 631(a), parties to communications (like United) can use tools (including software provided by other entities) to record or analyze their own conversations with others (like Plaintiff).  Use of these tools does not make their provider (Cresta) an unannounced third-party to the call— particularly where, as here, Cresta was contractually prohibited from using United's customer service call data for Cresta's own purposes—foreclosing Section 631(a) liability.

*Third*, Plaintiff's Section 631(a) claim should be dismissed for failure to plead additional required elements.  She does not allege facts sufficient to show that Cresta (1) either read or learned the contents of her communications with United (2) while those communications were "in transit."  Nor does she allege that she called United from a landline phone, as required.  And she *admits* that United disclosed upfront that her call would be monitored or recorded.  Given this, she cannot manufacture a Section 631(a) claim by asserting that United did not state that it was using *Cresta's* software specifically to accomplish this fully-disclosed monitoring and recording.

*Finally*, Plaintiff's Section 632(a) claim—that Cresta "eavesdrop[ped] upon or record[ed]" a "confidential communication"—fares no better.  She does not (and cannot) allege, as required, that she had a sensitive or intimate conversation with United.  She also fails to allege, for obvious reasons, that she had an objectively reasonable expectation that her call with United was not being

recorded.  And Cresta's software is not a "device" under CIPA—defeating her Section 632(a) claim, because that section only prohibits eavesdropping performed using "devices."

Because Plaintiff cannot cure these deficiencies through amendment, the Court should dismiss the Complaint in full and with prejudice.

## II.    BACKGROUND

Cresta was founded in 2017 by Stanford University researchers who developed human-centric, software-as-a-service ("SaaS") products—to allow businesses to provide more effective customer service to consumers.  *See* Compl. ¶ 24.  Cresta has become a "leade[r] in AI conversation analytics" supporting businesses across many industries and throughout the world.  *See id.*

Cresta provides various software tools to support customer service agents during their phone calls with customers, including Agent Assist and Conversation Intelligence.  Agent Assist helps support agents via speech transcription software that "automatically summarizes conversations, recording call reasons, call resolution, actions taken, key outcomes, and required follow ups."  *Id.* ¶ 25.  Conversation Intelligence helps businesses to provide training and oversight to their customer service agents, via "deeply actionable insights, hyper-efficient quality management, and outcome-driven coaching."  *Id.* ¶ 26.

In October 2023, Cresta and United entered into a SaaS agreement for Cresta to provide its Agent Assist and Conversation Intelligence products to enable United to analyze certain United customer service call data (the "United Agreement" or "Agreement").  *See id.* ¶¶ 2-3, 30-34; *see also* Manie-Oskoii Decl., Ex. 1.  Plaintiff alleges that under the United Agreement, "Cresta has the capability to use the contents of conversations it collects . . . for its own purposes," and "Cresta knows consumers of United Airlines are unaware that Cresta" is recording and analyzing these consumers' conversations with United.  Compl. ¶¶ 28, 34.  But ***contrary to these allegations***,[1] the Agreement expressly bars Cresta from using any United customer information for any purpose

---

[1] The Complaint invites the Court to draw incorrect inferences regarding the terms of the United Agreement—apparently because Plaintiff reviewed a form agreement on Cresta's website and then wrongly assumed that the United Agreement must incorporate the same material terms regarding how Cresta could use data from United customer service calls.  *Compare* Compl. ¶¶ 31-32 (basing Plaintiff's CIPA allegations on "the standard agreements on Cresta's website") *with* Manie-Oskoii Decl., Ex. 1 at § 2(l) (reflecting the actual terms of the United Agreement).

apart from improving the services that it provides to United.  *See* Manie-Oskoii Decl., Ex. 1 § 2(l). That is, the Agreement prevents Cresta from using United customers' data to train AI models that Cresta provides to other clients, or for any other independent commercial or marketing purposes. *See id*.

Plaintiff asserts that at some point within the past 12 months, she called United customer service to "update her travel arrangements and request special travel accommodations," a communication that Cresta allegedly recorded and analyzed in real time using its SaaS products. Compl. ¶ 9.  Plaintiff does not identify what, specifically, she said; who she spoke to; or any other facts regarding her call.  *See id*.  She alleges that both Cresta and United failed to inform her that her "phone calls were being surreptitiously transmitted to" Cresta.  *Id*. ¶ 11.  While Plaintiff **admits** that United's customer service line informs customers that their call may be monitored or recorded, she claims that she did not consent to the use of her communications for any purpose other than United's "internal training or quality assurance purposes."  *Id*. ¶¶ 7, 11.  Plaintiff does not (and cannot) explain how Cresta or United used her communications for any purpose, other than those that were expressly disclosed to her in advance.  *See id*.

Plaintiff alleges that Cresta violated CIPA, California Penal Code Sections 631(a) and 632(a), based on the conduct she describes in the Complaint.  *Id*. ¶¶ 43-62.  Plaintiff asserts claims under the first and second prongs of Sections 631(a).  *Id*. ¶¶ 43-54.  She alleges that Cresta "intentionally tapp[ed], electrically (sic) or otherwise, the lines of telephone communication between Plaintiff . . . and United" (*id*. ¶ 49) (the first prong) and that Cresta "willfully and without the consent of all parties to the communication, or in an[] unauthorized manner, read[] or attempt[ed] to read or learn the contents of electronic communications between Plaintiff . . . and United . . . while the electronic communications were in transit or passing over any wire, line, or cable (the second prong) (*id*. ¶ 50).  Plaintiff also alleges that Cresta "intentionally recorded the confidential communications of Plaintiff and Class Members" in violation of Section 632(a).  *Id*. ¶ 58.  She seeks to represent a class of "all California residents who called United Airlines while in California and whose conversations were intercepted and recorded by Cresta."  *Id*. ¶ 35.  And she seeks statutory damages, equitable relief, and attorneys' fees and costs.  *Id*., Prayer for Relief.

### III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the Court should dismiss a complaint that fails to state a cognizable legal theory or allege facts sufficient to establish a facially plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   The Court need not take allegations as true "that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (citation omitted).  Indeed, a plaintiff "may plead herself out of court" by alleging facts showing that she is **not** entitled to relief. *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (citation omitted).  Further, the Court need not accept allegations that are "contradicted by supporting documentation incorporated" into the complaint. *In re Northpoint Comm'ns Grp., Inc., Secs. Litig.*, 221 F. Supp. 2d 1090, 1098 (N.D. Cal. 2002) (citing *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998)); *see also Williams v. DDR Media, LLC*, No. 22-3789, 2024 WL 347904, at *3 (N.D. Cal. Jan. 30, 2024) (Illston, J.) (considering documents and materials incorporated by reference in complaint, in evaluating motion to dismiss CIPA claim).

### IV.    ARGUMENT

#### A.    Plaintiff's Claims Are Preempted by the Airline Deregulation Act.

The Complaint should be dismissed in its entirety and with prejudice because Plaintiff's claims are preempted by the Airline Deregulation Act of 1978 ("ADA")—a fatal defect that no amendment can cure. *See* 49 U.S.C. §§ 40101 *et seq.*

Congress enacted the ADA in 1978 to promote "efficiency, innovation, and low prices" in the airline industry through "maximum reliance on competitive market forces and on actual and potential competition" rather than regulation.  49 U.S.C. § 40101(a)(6), (a)(12).  To "prevent the states from undoing what the [ADA] was meant to accomplish," Congress included a broad preemption provision. *Ginsberg*, 572 U.S. at 283.  It provides that a state "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier."  49 U.S.C. § 41713(b)(1).

The ADA thus preempts state laws that are "related to"—*i.e.*, have "a connection with or

reference to"—an airline's prices, routes, or services.  *Ginsberg*, 572 U.S. at 280-84.  The Supreme Court has repeatedly reaffirmed that the phrase "related to" must be interpreted broadly.  *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383-84 (1992) (recognizing that the phrase "relating to" in the ADA's preemption provision is "deliberately expansive" and "conspicuous for its breadth"); *Ginsberg*, 574 U.S. at 281 (citing additional Supreme Court precedent which "reaffirmed *Morales'* broad interpretation" of ADA preemption).

Because Plaintiff's claims here are clearly "related to" United's services, they are preempted by the ADA.  Plaintiff alleges that Cresta violated CIPA by eavesdropping on individuals who called United's "customer service line" to "make reservations, request special travel accommodations, make changes to their flights, and receive additional forms of customer support."  Compl. ¶ 3.  She alleges that Cresta unlawfully eavesdropped on her "when she called United Airlines . . . to, *inter alia*, update her travel arrangements and request special travel accommodations."  *Id*. ¶ 9.  These allegations directly relate to United's principal services: the purchase, sale, and "furnishing of air transportation[.]"  *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 228 (1995); *see also Ginsberg*, 572 U.S. at 284 (holding that an airline's frequent flyer program "relate[d] to" the airline's "services" because it was connected to "access to flights").

Courts within the Ninth Circuit have held that claims like Plaintiff's—whether asserted against airlines directly, or their service providers—relate to airline services and are thus preempted by the ADA.  The Central District of California's decision in *Fudge v. Delta Air Lines, Inc.*, 753 F. Supp. 3d 987 (C.D. Cal. 2024) is particularly on point.  As here, the *Fudge* plaintiffs asserted a CIPA claim, alleging that Delta improperly disclosed their personal information to a third party.  *Id*. at 990.  The court held that the plaintiffs' "claims relate[d] directly to Delta's air transportation services" because they alleged that Delta obtained and improperly disclosed their personal information when they used Delta's website "to reserve air travel," "input choices and make reservations for *air travel*," and to "purchas[e] air travel."  *Id*. at 993 (emphasis in original).

The allegations in *Fudge* are materially similar to Plaintiff's allegations here—that Cresta improperly obtained her personal information when she called United to "make reservations, request special travel accommodations, make changes to [her] flights," and "update

. . . travel arrangements," among other things.  Compl. ¶¶ 3, 9.  And as in *Fudge*, Plaintiff's claims are preempted because they stem from her "having provided [her] information specifically for the purpose of accessing the airline's air transportation services."  *See Fudge*, 753 F. Supp. 3d at 993.

*Pica v. Delta Air Lines, Inc.* is also directly on point.  *See* No. 18-2876, 2019 WL 1598761 (C.D. Cal. Feb. 14, 2019), *aff'd*, 812 F. App'x 591 (9th Cir. 2020).  The *Pica* plaintiffs sued Delta and Delta's vendor—a "provider of voice and chat services related to sales and support for Delta"— following a data breach, asserting a variety of claims based on the defendants' alleged mishandling of the plaintiffs' personally identifiable information.  *Id*. at *2.  The court held that the state law claims against the vendor were preempted because it "provide[d] voice and chat services related to 'sales and support' for Delta."  *Id*. at *9.  The court had "little trouble concluding that [the vendor's] services relate to Delta's 'rates, routes, or services.'"  *Id*.  In turn, the Ninth Circuit had little trouble affirming the district court, holding that the plaintiffs' state law claims against the vendor were preempted because they related to Delta's "services or prices."  *See Pica*, 812 F. App'x at 593.

Plaintiff's claims are virtually the same as those in *Pica*.  The Complaint plainly alleges that Cresta was providing "support" for United when she called United to make or change her travel reservations.  Compl. ¶¶ 3, 32.  Thus, as in *Pica*, Plaintiff's claims here are preempted.

*Fudge* and *Pica* are among the numerous decisions nationwide that have found similar state law claims preempted—whether against airlines, their vendors, or both—because they relate to airline services.  *See, e.g.*, *In re Am. Airlines, Inc., Privacy Litig.*, 370 F. Supp. 2d 552, 564 (N.D. Tex. 2005) (finding privacy claims against American Airlines and its website vendor were preempted because they "related to" American's services; reasoning that Congress surely intended to preempt "state laws and state-law causes of action that could effectively dictate how [airlines] manage personal information collected from customers to facilitate the ticketing and reservation functions that are integral to the operation of a commercial airline"); *Kislov v. Am. Airlines, Inc.*, No. 17-9080, 2022 WL 846840, at *3-4 (N.D. Ill. Mar. 22, 2022) (the ADA preempted claims that American Airlines violated the Illinois Biometric Information Privacy Act when it used voice recognition software to record customer voices on its customer service hotline, because the "customer service hotline[s] [were] used to facilitate air transportation," and thus, "American's

hotline [was] itself a 'service' under the ADA"); *Pena v. British Airways, PLC (UK)*, No. 18-6278, 2020 WL 3989055, at *5 (E.D.N.Y. Mar. 30, 2020) (claims related to "[d]efendant's provision of reservations and ticket sales via its website and mobile application" were preempted because they related to "services as defined under the ADA") , *aff'd sub nom. Pena v. British Airways, PLC*, 849 F. App'x 13 (2d Cir. 2021); *Farash v. Cont'l Airlines, Inc.*, 574 F. Supp. 2d 356, 366 (S.D.N.Y. 2008), *aff'd*, 337 F. App'x 7 (2d Cir. 2009) (finding "claims related to Continental's post-flight customer service . . . clearly relate[d] to an airline service" and were thus preempted by the ADA), *aff'd sub nom. Pena v. British Airways, PLC*, 849 F. App'x 13 (2d Cir. 2021); *In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 304, 315 (E.D.N.Y. 2005) (state law privacy claims based on personal information JetBlue "obtained from its passengers over the telephone . . . during the selection and purchase of travel arrangements" were preempted, because they related to "the manner in which JetBlue communicates with its customers in connection with reservations and ticket sales, both of which are services provided by the airline to its customers").

In short, Plaintiff's claims arise out of the alleged misuse of her customer information provided when she called United to make, change, or otherwise manage her reservation for air transportation. As such, the claims plainly "relate to" United's "services," and thus fall within the ADA's broad preemptive scope. Thus, the Complaint should be dismissed in its entirety and with prejudice on this basis alone.

### B.    Plaintiff Fails to Plead a CIPA § 631(a) Violation.

In addition to Plaintiff's claims being preempted by the ADA, Plaintiff has provided no specific facts to support her allegation that Cresta "recorded" her calls to United. *See, e.g.*, Compl. ¶¶ 4, 10-11, 51, 53. Instead, she seeks to manufacture a CIPA claim based on two disjointed allegations—that (1) Cresta contracted with United to provide the latter with customer support software; and (2) Plaintiff called United within the past year. *See, e.g., id.* ¶¶ 2-6, 9. She joins these allegations to arrive at an unwarranted conclusion that she presents as fact: that Cresta improperly recorded her call to United in violation of CIPA. *See id*. ¶¶ 4, 10-11, 51, 53. As set forth below, these allegations do not state a CIPA claim.

1.     **Cresta was not a third party to Plaintiff's communications with United.**

Under Section 631(a), United's use of Cresta's software to provide Plaintiff with an enhanced customer service experience does not make Cresta a third-party participant to Plaintiff's alleged communication with United. Her Section 631(a) claim fails on this basis alone.

Section 631(a) prohibits "[a]ny person" from using "any machine, instrument, or contrivance" in any of four categories of action, including, as relevant to this litigation: (1) intentionally tapping or making any unauthorized connection, "with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system" (the first prong); and (2) reading or attempting to "read…or learn the contents or meaning of any message, report, or communication while the same is in transit" (the second prong). Cal. Penal Code § 631(a).

Plaintiff alleges that Cresta violated Section 631(a)'s first prong by "intentionally tapping, electrically [sic] or otherwise, the lines of telephone communication between Plaintiff . . . and United[.]" Compl. ¶ 49. She further alleges that Cresta violated Section 631(a)'s second prong by "willfully and without the consent of all parties to the communication, or in an[] unauthorized manner, reading or attempting to read or learn the contents of electronic communications between Plaintiff . . . and United . . . while the electronic communications were in transit or passing over any wire, line, or cable" (the second prong) (*id*. ¶ 50). Both theories fail because Plaintiff does not (and cannot) allege that Cresta was a third party to her communication with United.

"Only a third party can listen secretly to a private conversation," and a party to a communication can record it without eavesdropping. *Williams v. DDR Media, LLC*, No. 22-3789, 2023 WL 5352896, at *3 (N.D. Cal. Aug. 18, 2023) (Illston, J.) (citation modified); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021); *see also Williams v. What If Holdings, LLC*, No. 22-3780, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) ("Parties to a conversation cannot eavesdrop on their own conversation[.]"); *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979) (Section 631(a) "has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation"); *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975) (no CIPA violation where party to communication surreptitiously used tape recorder to record conversation).

This well-established rule comes from two decisions: *Rogers*, 52 Cal. App. 3d at 899, and *Ribas v. Clark*, 38 Cal. 3d 255 (1985).  In *Rogers*, the defendant installed a tape recorder on his telephone, recorded a conversation with the plaintiff, and then played that conversation for a third party.  52 Cal. App. 3d at 897-98.  The court held that a party to a conversation can record it without eavesdropping: "It is never a secret to one party to a conversation that the other party is listening to the conversation: only a third party can listen secretly to a private conversation."  *Id.* at 899.  In other words, the tape recorder is not a third party.  In *Ribas*, the California Supreme Court applied this principle to distinguish the circumstance of a third party who listened in on a call between a husband and wife, unbeknownst to the husband.  The Court held that the third party had "eavesdropped" for purposes of CIPA.  The *Ribas* court distinguished "the secondhand repetition of the contents of a conversation" in *Rogers* from the "simultaneous dissemination to an unannounced second auditor" in *Ribas*, because the latter "denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements."  38 Cal.3d at 360-61.

Courts within the Ninth Circuit apply either the "capability" test or the "extension" test to determine whether a Section 631(a) plaintiff has credibly alleged that a defendant was a third party.  As *Doe v. Kaiser Foundation Health Plan* explained, these tests need not be read as contradictory or competitive to each other and, regardless of which test the Court follows, "the key is whether the hiring of a third party to collect information – even if for the benefit of the contracting party – poses a materially enhanced risk to the individual's privacy."  No. 23-2865, 2024 WL 1589982, at *17 (N.D. Cal. Apr. 11, 2024).  The Complaint provides no factual allegations demonstrating a materially enhanced risk to Plaintiff's privacy, and as further described below, Plaintiff's Section 631(a) claim satisfies neither the "capability" nor "extension" test, requiring dismissal.

### a.    Cresta is not a third party under the "capability" test.

The "capability" test to assess whether an alleged eavesdropper is a third party was first described in the non-binding decision of *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023).  *Cf. Williams*, 2023 WL 5352896, at *4 (Illston, J.) (explaining that "district courts have split on" whether to apply the "extension" or "capability" tests).

*Javier* provided that a vendor could face Section 631(a) liability as a third-party eavesdropper if it has the capability to use its customer's data for its own purposes. *See Javier*, 649 F. Supp. 3d at 899-900. But *Javier* recognized that a software vendor would not be an "unannounced second auditor" if it "does not have the capability to use its record of the interaction for any other purpose (just as a tape recorder has no independent capability to divulge the recording for any other purpose but that of the owner)" or if "the ubiquity of services like [those of the vendor] on the internet effectively renders it party to the 'firsthand dissemination' of [the plaintiff's] information to [the defendant]." *Id.* at 900; *see also Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 737-38, 746 (N.D. Cal. 2023) (Home Depot's use of LivePerson, "a company that provides software to analyze the data and provide Home Depot with customer data metrics related to each conversation," did not violate CIPA because plaintiff did not allege that "LivePerson, or any other third party, can use the information obtained for any other purpose besides relaying it to Home Depot"); *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 973 (N.D. Cal. 2023) (Salesforce did not violate CIPA by providing a chat feature where the allegations did "not support a reasonable inference that Salesforce has the capability to use these communications for any purpose other than furnishing them to" its direct customer); *Balletto v. Am. Honda Motor Co.*, No. 23-1017, 2023 WL 7026931, at *1-3 (N.D. Cal. Oct. 24, 2023) (same); *Valenzuela v. Super Bright LEDs Inc.*, No. 23-1148, 2023 WL 8424472, at *8 (C.D. Cal. Nov. 27, 2023) (rejecting as "conclusory and insufficient" under *Javier* the plaintiff's allegation that the defendant chat vendor had the "capability to use its record of [w]ebsite users' interaction[s] . . . [for] data analytics and marketing/advertising to consumers"); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1083-84 (C.D. Cal. 2023) (dismissing Section 631(a) claim where plaintiff's allegations "only suggest that the third party [software vendor] analyzed or used the data on behalf of or in tangent with [its customer]" and "nowhere suggest that the [vendor] has the ability to use the information independently").

The Complaint implicitly concedes that Plaintiff does not satisfy the "extension" test (which is discussed *infra*) and instead seeks to plead specifically into *Javier*'s "capability" test. *See, e.g.*, Compl. ¶¶ 4, 28, 33, 48. That is, Plaintiff alleges that Cresta is an eavesdropper because it has the

"capability to use the contents of conversations it collects . . . for its own purposes, other than simply furnishing the recording to its clients[.]"  *See id.* ¶ 48.  But as with each of the above-dismissed Section 631(a) claims, the Complaint here only offers conclusory and unsupported allegations that do not satisfy the "capability" test.  Specifically, Plaintiff alleges that Cresta uses "wiretapped data" to "provide, run, personalize, improve, operate, maintain, and market its products and services, and to conduct performance reporting" and that it "has the capability to use the contents of conversations it collects . . . for its own purposes[.]"  *Id.* ¶¶ 33, 48.  But as above, Plaintiff's claim is apparently based on her review of a form agreement on Cresta's website that contains data usage terms different from Cresta's agreement with United.  *See* Section II, *supra*.

In reality, the United Agreement, which is incorporated by reference into Plaintiff's Complaint,[2] wholly contradicts Plaintiff's assertion.  That Agreement contains a "Customer Data License Grant" which provides that Cresta may only collect and handle United customer data "for [United's] sole benefit" and to "provide and improve [Cresta's] [s]ervices" solely as they are provided to United (*i.e.*, not to Cresta's other customers).  Manie-Oskoii Decl., Ex. 1 § 2(l).  That is, like the service providers in *Graham* and its progeny, Cresta does not have the authority to use the data that it receives from United for its own purposes.  *See also Kaiser*, 2024 WL 1589982, at *18 ("the critical question is the extent the [allegedly eavesdropping] third parties were subject to Kaiser's control and ability to limit the use of dissemination [sic] of the medical data.  For instance, what steps did Kaiser take to ensure that third parties could collect and/or use information for Kaiser's benefit only, and not for the benefit of third parties (*e.g.*, to sell to others)?"); *Garcia v. Build.com, Inc.*, No. 22-1985, 2023 WL 4535531, at *5 (S.D. Cal. July 13, 2023) (dismissing Section 631(a) claim and explaining, "In cases where courts have found software companies to be third-party eavesdroppers, those third parties had mined information from other websites and used that information for their own purposes.").[3]

---

[2] The Complaint incorporates the United Agreement by reference.  *See, e.g.*, Compl. ¶¶ 29-33 (purporting to describe the details of the United Agreement, including Cresta's supposed "capability to use the wiretapped data it collects").  As such, the Court may consider the United Agreement in evaluating this motion.  *See, e.g.*, *Williams*, 2024 WL 347904, at *3 ("materials that [plaintiff] relies on and cites in her [complaint]" were incorporated by reference into same).

[3] By contrast, some courts have allowed Section 631(a) claims to proceed where the third party affirmatively monetized the challenged data for its own, independent purposes.  *See, e.g.*, *In re*

Thus, even following *Javier*, courts dismiss CIPA claims based on speculative and conclusory allegations like Plaintiff's, where the complaint does not provide specific, particularized allegations that the software vendor ***actually*** used—or had the contractually-provided capability (as opposed to a hypothetical technical capability)—to use the collected data for its own purposes. *See, e.g.*, *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1002-03 (N.D. Cal. 2024) (under *Javier*, allegations that software vendor "harvest[ed] . . . chat transcripts for valuable data" were too "generalized and vague" to establish that vendor was third-party eavesdropper).

It is true that the Court has rejected motions to dismiss in CIPA cases based on more permissive contracts between vendors and their business customers. *See, e.g.*, *Taylor v. ConverseNow Techs., Inc.*, No. 25-990, 2025 WL 2308483, at *4 (N.D. Cal. Aug. 11, 2025) (denying motion to dismiss Section 631(a) claim because defendant's policies disclosed that it used customer information to "improv[e] [its] ordering platform, advertisements, products, and services" and "continuously refin[e] the underlying algorithms"). However, a long line of precedent provides that under CIPA, the Court should evaluate each individual contract and determine what actions, if any, the vendor is permitted to take or is restricted from taking as to the disputed data. Thus, for instance, prior cases have held that there was a potential for CIPA liability based on contract terms that (1) allowed a vendor to use a customer's data for the vendor's independent commercial purposes that were unrelated to that specific customer, *see Gladstone v. Amazon Web Services, Inc.*, 739 F. Supp. 3d 846, 854-55 (W.D. Wash. 2024); or (2) required business customers to opt-in affirmatively to the defendant-vendor's ability to use the data for its own independent, development purposes, leaving open the possibility that the vendor would be capable of using the data for such independent purposes, *see Ambriz v. Google, LLC*, No. 23-5437, 2025 WL 830450, at *1, *3 (N.D. Cal. Feb. 10, 2025) (expressly considering that "under its terms of service, Google is not required to seek consent of the caller to use data collected during customer service calls").

By contrast, here—as in *Kaiser*—Cresta is contractually prohibited from using United's

---

*Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 596, 607-08 (9th Cir. 2020) (allowing CIPA claim to proceed against Facebook, based on allegations that, after companies embedded Facebook plug-ins on their websites, Facebook collected data on visitors to those websites and sold the data to advertisers).

data for any purpose other than providing services to United, defeating Plaintiff's ability to state a Section 631(a) claim. *See* Section II, *supra*; *Kaiser*, 2024 WL 1589982, at *18 ("To the extent [p]laintiffs argue that a third party should *per se* be considered an eavesdropper—*i.e.*, even if hired by a party to the communication to do work solely for the party's benefit and with strict limits on the ability of the third party to use the information for any other purpose – the Court does not agree[.]"). Unlike in *Taylor*, Cresta does not use United's data to improve the products and services it provides to non-United clients, or for any advertising purposes, putting Cresta firmly in line with other defendants that have obtained dismissal of Section 631(a) claims. *Id*. at *4-5 (observing that dismissal is appropriate where a software provider does not "us[e] [collected data] for any purpose other than to benefit its clients") (collecting cases). And unlike in *Ambriz*, Cresta could not even seek callers' consent to use data collected from their customer service calls for Cresta's own purposes, because United had already denied Cresta that consent. Following the Court's precedent, because the United Agreement foreclosed Cresta's ability to use the data at issue, Cresta does not satisfy the "capability" test.

### b.    Cresta is not a third party under the "extension" test.

To establish Section 631(a) liability under the "extension" test, a plaintiff must plausibly allege facts "suggest[ing] that the software vendor ***independently*** 'uses' the gathered data in some way[.]" *What If Holdings, LLC*, 2022 WL 17869275, at *4 (emphasis added). Courts within this district applying the extension test have dismissed Section 631(a) claims involving technology like Cresta's software, analogizing it to the tape recorder in *Rogers*, not the friend in *Ribas*.

For example, in *Graham*, Judge Beeler held that the plaintiff failed to state a Section 631(a) claim against Noom, a weight-loss web application, and FullStory, the provider of "session replay" software that Noom used "to record what visitors are doing on the Noom website, such as their keystrokes, mouse clicks, and page scrolling, thereby allowing a full picture of the user's website interactions." *Graham*, 533 F. Supp. 3d at 827. The Court noted that FullStory provided a service solely for the benefit of its clients (*i.e.*, Noom) and the plaintiff did not allege "that FullStory intercepted and used the data itself." *Id*. at 832. Rather, FullStory was "a vendor that provides a software service that captures its clients' data, hosts it on FullStory's servers, and allows the clients

to analyze their data." *Id.* As such, FullStory was "an **extension** of Noom" that "provides a tool – like the tape recorder in *Rogers* – that allows Noom to record and analyze its own data in aid of Noom's business." *Id.* (emphasis added). The Court held that FullStory was "not a third-party eavesdropper" and dismissed the Section 631(a) claim. *Id.* at 833.

Multiple courts have followed *Graham*'s reasoning to dismiss Section 631(a) claims involving similar technologies. *See, e.g.*, *Williams*, 2023 WL 5352896, at *4-5 (Illston, J.) (dismissing Section 631(a) claim against provider of keystroke recording software because it was "more akin to a tape recorder vendor than an eavesdropper"); *What If Holdings*, 2022 WL 17869275, at *4 (explaining that the software "functioned as a recorder, and not as an eavesdropper"); *Johnson v. Blue Nile, Inc.*, No. 20-8183, 2021 WL 1312771, at *1 (N.D. Cal. Apr. 8, 2021) (dismissing Section 631(a) claim because the plaintiff "does not plausibly plead that FullStory eavesdropped on her communications with Blue Nile . . . only that FullStory is Blue Nile's vendor for software services"); *Byars*, 656 F. Supp. 3d at 1068 (software vendor that only "recorded and analyzed" its client's data for the client's own use, without "aggregat[ing] . . . data for resale" was not a third party liable under Section 631(a)).

As in the above cases, Plaintiff alleges that Cresta provides software services to United. *See, e.g.*, Compl. ¶ 1. And she alleges that United disclosed to her that her call was being monitored or recorded. *See id.* ¶ 7. In fact, similarly to the software provider FullStory in *Graham*, Cresta is alleged to be a vendor that captures its customer's (United's) call data, hosts it on Cresta's servers, and allows United to analyze that data. *See id.* ¶ 1. Plaintiff's grievance is that United did not inform her that **Cresta's** software was doing the recording. *See id.* But that is no different from claiming that a party who records a call violates Section 631(a) by not disclosing the manufacturer of the tape recorder. CIPA does not stretch that far. *See, e.g.*, *Rogers*, 52 Cal. App. 3d at 899; *Williams*, 2023 WL 5352896, at *4-5; *cf. Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1066-68 (C.D. Cal. 2023) ("As in *Graham* [*v. Noom*]…[d]efendant uses a third-party vendor to 'record and analyze its own data in aid of [defendant's] business,'" not the 'aggregation of data for resale,' which makes the third-party an 'extension' of [d]efendant's website, not a 'third-party eavesdropper.'"); *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1109 (C.D. Cal. 2023) ("Defendant

is entitled to the party exemption applied to the second clause of section 631(a), as [p]laintiffs fail to plead that the unnamed third party acted sufficiently independently from [d]efendant as to constitute an unannounced auditor under California law.").

Indeed, Plaintiff concedes that Cresta's software merely assisted the live United customer service agent (who was indisputably a party to her alleged call) in responding to customers, including by "prompt[ing] agents with real-time suggestions, such as objection responses, expectation setting, troubleshooting FAQs, and more." Compl. ¶ 1. As such, Cresta's software is plainly "an extension" of United because it simply "provides a tool" for United's business. *See Graham*, 553 F. Supp. 3d at 832.

Nor can Plaintiff establish that Cresta is a third party under the "extension" test by claiming that Cresta uses data from United's customer service calls for Cresta's own purposes. Courts dismiss Section 631(a) claims where, as here, a plaintiff supplies only "vague and conclusory" allegations that a vendor is "harvest[ing] valuable data" for its own purposes. *See Cody v. Boscov's, Inc.*, 658 F. Supp. 3d 779, 782–83 (C.D. Cal. 2023) (dismissing Section 631(a) claim because conclusory allegations did not show that the vendor was "recording [its customers'] information for some use . . . beyond simply supplying this information back to [the vendor's client]"); Compl. ¶¶ 27, 53. But the United Agreement wholly contradicts Plaintiff's assertion by providing that Cresta may only collect and handle United customer data "for [United's] sole benefit" and to "provide and improve [Cresta's] [s]ervices" solely as they are provided to United (*i.e.*, not to Cresta's other customers). Manie-Oskoii Decl., Ex. 1 § 2(l). That is, like the service providers in *Graham* and its progeny, Cresta does not have the authority to use the data that it receives from United for its own purposes. *See, e.g., Graham*, 533 F. Supp. 3d at 832 ("Unlike NaviStone's and Facebook's aggregation of data for resale, there are no allegations here that FullStory intercepted and used the data itself"); *What If Holdings*, 2022 WL 17869275, at *3 ("[A] key distinction is whether or not the alleged third-party software provider aggregates or otherwise processes the recorded information, which might suggest that the software vendor independently 'uses' the gathered data in some way.").

Thus, the Court should dismiss Plaintiff's Section 631(a) claim, because she does not (and

1    cannot) allege that Cresta was a third party under either the "extension" or "capability" tests.

2          **2.    Plaintiff does not allege that Cresta attempted to read or learn the contents of her communication while "in transit" as required under Section 631(a)'s second clause.**

3

4          Plaintiff fails to state a claim under the second clause of Section 631(a) because she fails to

5    allege that Cresta attempted to read or learn the "contents" of her communication while they were

6    "in transit."  *See* Cal. Penal Code § 631(a) (prohibiting any person from "in any unauthorized

7    manner, read[ing], or attempt[ing] to read, or . . . learn[ing] the contents or meaning of any message,

8    report, or communication *while the same is in transit* . . .") (emphasis added); *see also Jones v.*

9    *Tonal Sys., Inc.*, 751 F. Supp. 3d 1025, 1035-36 (S.D. Cal. 2024) (dismissing Section 631(a) claim

10   because conclusory allegations that chat communications were routed to a third party's servers in

11   "real-time" were insufficient to allege interception and put defendant on fair notice of the alleged

12   CIPA violation); *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal.

13   2023) (plaintiff's allegations that alleged third-party eavesdropper's software allowed it "to secretly

14   intercept in real time, eavesdrop upon, and store transcripts of [d]efendant's chat communications"

15   were insufficient because they did "little more than restate the pleading requirement of real time

16   interception"); *R.C. v. Sussex Publishers, LLC*, No. 24-2609, 2025 WL 948060, at *7 (N.D. Cal.

17   Mar. 28, 2025) (dismissing Section 631(a) claim based on a technology that was used to view, read,

18   and process data only after the data at been fully collected and stored—i.e., was at rest); *Licea v.*

19   *Cinmar*, 659 F. Supp. 3d at 1110 ("[b]are allegations of recording and creating transcripts do not

20   specifically allege that [p]laintiffs' messages were intercepted while in transit").

21         First, while Plaintiff alleges the *purpose* of her communications—to "update her travel

22   arrangements and request special travel accommodations"—she does not allege what the *contents*

23   of her communications with United were.  *See* Compl. ¶ 9.  This alone favors dismissal of any claim

24   under Section 631(a)'s second clause.  *See Posadas v. Goodyear Tire & Rubber Co.*, No. 23-0402,

25   2024 WL 5114133, at *5 (S.D. Cal. Dec. 13, 2024) ("The specifics of the shared information are

26   necessary for the Court to determine whether [p]laintiff has sufficiently asserted a claim for

27   purposes of [a] motion to dismiss").

28

Further, Plaintiff does not plausibly allege that any attempt by Cresta itself to "read" or "learn" the contents of the communication (i.e., to understand its meaning) occurs while the call is ongoing "in transit." *See, e.g.*, *Mireskandari v. Mail*, No. 12-29743, 2013 WL 12129559, at *10 n.44 (C.D. Cal. July 30, 2013) (finding plaintiff failed to "plausibly [] plead that NSC intercepted any electronic communication while it was in transit; at most, he alleges the illegal disclosure of data NSC held in storage"); *People v. Wilson*, 17 Cal. App. 3d 598, 603 (1971) (concluding no CIPA violation because information "was obtained after and not 'while' [communications] were in transit or passing 'over' the telephone wire"). As one court explained, "the crucial question . . . is whether [the plaintiff] has plausibly alleged that [the defendant] read one of his communications while it was still in transit, i.e., before it reached its intended recipient." *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021). "Bare allegations of recording and creating transcripts do not specifically allege that Plaintiffs' messages were intercepted while in transit." *Licea v. Am. Eagle Outfitters*, 659 F. Supp. 3d at 1085; *Rodriguez v. Google LLC*, No. 20-4688, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) ("[u]sing the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible Google is intercepting [plaintiff's] data in transit."). Instead, a party must allege specific facts supporting real-time interception. *Valenzuela*, 674 F. Supp. 3d at 758 (holding that it was "impossible to infer from the complaint" that communications were intercepted "while . . . in transit" where plaintiff alleged that third-party "code" was embedded in defendant's website for a chat feature); *cf. Taylor*, 2025 WL 2308483, at *4 (finding "in transit" requirement satisfied where, unlike here, the plaintiff plausibly alleged that an alleged eavesdropper had directly participated in the underlying call by deceptively claiming to be the underlying recipient).

CIPA's express purpose is to combat the "invasion of privacy" that occurs when a third party not only ***possesses*** a communication, but actively tries to understand its private message. *See* Cal. Penal Code § 630. Thus, to "read" or "learn" under Section 631(a), the defendant must take some additional action to interpret or understand the communication's substantive message. *See Torres v. Prudential Fin., Inc.*, No. 22-7465, 2025 WL 135088, at *5-6 (N.D. Cal. Apr. 17, 2025) (granting summary judgment for defendant on Section 631(a) claim where plaintiff failed to

establish that session replay software read, or attempted to read, his communications while he interacted with website).

Here, there is no allegation that any "person" (*i.e.*, Cresta) attempted to read or learn the *meaning* of the contents of any communications while they were in transit in this case. "Contents," for purposes of Section 631(a), means the *substance* of the communication, not other types of data relating to the communication. *See, e.g.*, *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) ("[C]ourts must consider whether the intercepted information is information about a user's communication, or the communication itself . . . with [o]nly the latter [] protected under CIPA."). At most, the Complaint alleges that Cresta offers content-neutral recording and analytics tools to help *human customer service agents* participating on the calls better interpret the meaning of the communications and better assist callers. *See, e.g.*, Compl. ¶ 1 ("The platform operates by recording a caller's speech and then transcribing it using natural language processing ('NLP'), allowing artificial intelligence ('AI') to read the text, identify patterns, and classify the data.") Nowhere does Plaintiff allege that Cresta itself attempts to understand the meaning of any "contents" of the conversations it records and processes.

### 3.    Plaintiff does not allege eavesdropping on a "telegraph or telephone wire," as required under Section 631(a)'s first clause.

Plaintiff also cannot state a claim under Section 631(a)'s first clause because she does not allege that Cresta wiretapped a "telegraph or telephone wire[.]" Cal. Penal Code § 631(a). The Complaint does not allege that Plaintiff used a landline to contact United, and given the ubiquity of smartphones and other non-landline calling mechanisms, the Court cannot infer this.

It is well-established that a smartphone (i.e., a computer) does not satisfy the "telegraph or telephone wire" requirement. *See, e.g.*, *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d at 1080 (though they "contain the word 'phone' in their name, and have the capability of performing telephonic functions, [smartphones] are, in reality, small computers") (quoting *Mastel*, 549 F. Supp. 3d at 1135); *see also In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 826 (N.D. Cal. 2020) (Section 631(a) claim under first clause must be dismissed if allegations do not show that plaintiff

called "using telegraph or telephone wires").[4]

Plaintiff does not allege that she used a "telegraph or telephone wire" to contact United on any occasion.  She alleges only that she "called" United.  Compl. ¶ 9.  This does not support the inference that she used a landline.  *See Mandel v. Hafermann*, 503 F. Supp. 3d 946, 968 (N.D. Cal. 2020) (the court should not assist a plaintiff by "reading into" or inferring allegations that were not expressly pled).  The Court should dismiss Plaintiff's Section 631(a) wiretapping claim for failure to plead this required element.

### 4. Plaintiff consented to having her call monitored and recorded.

Plaintiff's Section 631(a) claim also fails because Section 631(a) requires the prohibited conduct to be "without consent," and prior consent is an absolute defense to a CIPA claim.  "Under CIPA, a consent defense is established when both parties—the sender and the recipient of the communication—consent to the alleged interception."  *Matera v. Google Inc.*, No. 15-4062, 2016 WL 5339806, at *7 (N.D. Cal. Sept. 23, 2016); *see also Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 118 (2006) (CIPA prohibits eavesdropping "without first informing all parties to the conversation that the conversation is being recorded"); *Negro v. Super. Ct.*, 230 Cal. App. 4th 879, 892 (2014) ("In the wiretapping context, a finding of implied-in-fact consent requires 'circumstances indicating that the [party] knowingly agreed to the surveillance.'").

As discussed above, Plaintiff affirmatively alleges that United informed her that her call would be monitored and recorded, (Compl. ¶ 7), but alleges that United did not specify that Cresta would provide the relevant software.  *See* Section IV.B.1.a, *supra*.  But Plaintiff cannot plead around the fact of notice, and the Complaint is clear that she knowingly stayed on the call after receiving this disclosure from United.  This requires dismissal of her Section 631(a) claim.

---

[4] *Ambriz* is an outlier.  That decision concluded that "the California Legislature's stated intent to protect privacy interests" merited implicitly expanding Section 631(a)'s first clause to smart phones and other similar technologies.  *See Ambriz*, 2025 WL 830450, at *5.  Not only does that decision fly in the face of the vast majority of decisions to consider the question (see above), but it is inconsistent with the legislative history.  The latter shows that while California lawmakers have "amended [CIPA] many times since it was enacted," they "have not redefined section 631 to apply to internet communications" or wireless phones, despite having amended the statute as recently as 2022.  *Licea v. Cinmar*, 659 F. Supp.3d at 1106.  As such, the Court should not follow *Ambriz* on this point.

**C.**     **Plaintiff Fails to Plead a CIPA § 632(a) Claim.**

To state a Section 632(a) claim, Plaintiff must plausibly allege that Cresta used "an electronic amplifying or recording device to eavesdrop upon or record" a "confidential communication," without receiving all-party consent.  Cal. Penal Code § 632(a).  Plaintiff's claim fails for two independent reasons.

*First*, Plaintiff does not adequately allege that she had a "confidential communication" with United.  A "confidential communication" is one that is "carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto[.]"  *Id.* § 632(c).  This requires that a party have "an objectively reasonable expectation that the conversation was not being overheard or recorded."  *Kight v. CashCall, Inc.*, 200 Cal. App. 4th 1377, 1396 (2011) (emphasis omitted); *see also Revitch v. New Moosejaw, LLC*, No. 18-6827, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (similar).

Courts routinely dismiss Section 632(a) claims where plaintiffs fail to adequately allege that their communications were so sensitive or intimate as to be viewed as confidential.  *See, e.g.*, *Gibson v. Planned Parenthood Fed'n of Am., Inc.*, No. 23-4529, 2024 WL 4251892, at *2 (N.D. Cal. July 2, 2024) (dismissing Section 632 claim where complaint was "too vague and general" about plaintiff's alleged communication to plausibly allege that she shared "anything typically understood to be confidential"); *Griffith v. TikTok, Inc.*, No. 23-964, 2024 WL 5279224, at *7-8 (C.D. Cal. Dec. 24, 2024) (dismissing a Section 632(a) claim due to plaintiffs' "fail[ure] to identify any sensitive information collected from them").

Plaintiff alleges the information Cresta collected from her included "confidential travel arrangements and accommodations," (Compl. ¶ 9), and "discussions of financial information for travel reservations, modifications, special accommodations, and other forms of information required for the purpose of identity verification."  *Id.* ¶ 59.  Plaintiff does not allege any details about what kinds of "arrangements" or "accommodations" she discussed with United, or what type of "financial information" she shared.  Without more, her vague and general descriptions, which do not identify any actual sensitive information that Cresta may have collected, fail to plead the interception of any "confidential communications" and are precisely the sort of inadequate

allegations that courts consistently find merit dismissal of Section 632(a) claims. These allegations also fall far short of those that the Court found sufficient in *Taylor*, where the plaintiff specifically alleged the collection of her "name, address, and credit card information," data which Plaintiff here does not claim to have provided. *See* 2025 WL 2308483, at *7. And Plaintiff does not and cannot plausibly allege a reasonable expectation that her call with United was confidential where, as she herself alleges, she was notified that her call may be "monitored or recorded for quality purposes." *See* Compl. ¶ 7.

**Second**, courts have held that software such as Cresta's challenged products is not a "'device' within the meaning of CIPA" and cannot give rise to liability under provisions of CIPA, including Section 632(a), which specifically require that the defendant carried out its eavesdropping using "devices." *See In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 193 (N.D. Cal. 2019) (dismissing CIPA claim with prejudice because, *inter alia*, Google software was not a "device[]" within the meaning of CIPA); *see also Doe v. Microsoft Corp.*, No. 23-0718, 2023 WL 8780879, at *8 (W.D. Wash. Dec. 19, 2023) (dismissing Section 632(a) claim brought against Microsoft as its software did not qualify as a "device").

Plaintiff's Section 632(a) claim fails for the additional reason that it is entirely based on alleged eavesdropping performed by non-device software. *See In re Google Location Hist. Litig.*, 428 F. Supp. 3d at 193 ("Software like Google Maps, Chrome, etc. are not 'devices' within the meaning of CIPA because they are not 'equipment.'"). Plaintiff repeatedly acknowledges that Cresta's services are provided by software. *See, e.g.*, Compl. ¶¶ 1, 24 (recognizing that Cresta provides "conversation intelligence software-as-a-service"); *id.* ¶ 25 (describing Cresta's speech transcription service, Agent Assist, as "software"). The Section 632(a) claim should be dismissed because, as the Complaint acknowledges, Cresta's referenced services are software and thus cannot serve as the basis for Plaintiff's claim.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff fails to state a claim against Cresta. As her claims concern Cresta's provision of services to United, they are fully preempted by federal law and cannot be remedied by further amendment. Dismissal of the Complaint should therefore be with prejudice.

*See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) (dismissal without leave to amend proper where "amendment would be futile").

Dated: August 18, 2025                              COOLEY LLP


                                                    By: */s/ Bethany C. Lobo*
                                                        Bethany C. Lobo

                                                    Attorney for Defendant
                                                    CRESTA INTELLIGENCE, INC.